UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH M. WHITE,<br><br>                Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | No.  2:20-cv-1695-KJN<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 14, 19) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits.[1]  In her summary judgment motion, plaintiff contends the Administrative Law Judge erred in:  (A) failing to properly evaluate the medical evidence in assessing plaintiff's Residual Functional Capacity ("RFC"); and (B) failing to properly evaluate plaintiff's subjective complaints.  Plaintiff also contends:  (C) a new hearing is warranted due to the appointment status of the Commissioner.  The Commissioner opposed, and filed a cross–motion for summary judgment.

For the reasons that follow, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the Commissioner.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties consented to proceed before a Magistrate Judge for all purposes.  (ECF Nos. 5, 8, 9.)

1

I. **BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**[2]

On March 5, 2015, plaintiff applied for Widow's Disability Insurance Benefits, alleging an onset date of July 11, 2007.[3] (Administrative Transcript ("AT") 375-76, 406-16.) Plaintiff claimed disability due to "congestive heart failure, sarcoidosis, diabetes, neuropathy, bipolar, [and] depression." (AT 406-16.) Plaintiff's application was denied initially and upon reconsideration. (AT 118-32, 133-48.) Plaintiff sought review of these denials with an ALJ on August 10, 2017. (AT 86-117.) The ALJ issued an unfavorable decision on January 9, 2018. (AT 149-70.) Plaintiff appealed to the Appeals Council, who remanded for consideration of additional records plaintiff's attorney submitted the day before the hearing. (AT 171-75.) At a second hearing on May 28, 2019, plaintiff testified about her conditions, and a vocational expert ("VE") testified regarding the ability of a person with plaintiff's impairments to perform various jobs. (AT 48-84.)

On July 19, 2019, the ALJ issued a decision determining plaintiff was not disabled. (AT

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571—76; Bowen v. Yuckert, 482 U.S. 137, 140—42 (1987). The following summarizes the sequential evaluation:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[3] At the second hearing on May 28, 2019, plaintiff amended her alleged onset date to August 29, 2015. (AT 52.)

15-41.) As an initial matter, the ALJ determined plaintiff met insured status through July 31, 2020. (AT 21.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since 2007. (Id.) At step two, the ALJ determined plaintiff had the following severe impairments: cardiomyopathy, diabetes mellitus with peripheral neuropathy, history of congestive heart failure, obesity, depressive disorder, and sarcoidosis. (Id.) At step three, the ALJ determined plaintiff's severe mental impairments were "mild" to "moderate," and did not meet or medically equal the severity of an impairment listed in Appendix 1. (AT 22-24) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform light work, except she:

> could frequently kneel[;] could never climb ladders, ropes, or scaffolds[;] could occasionally climb ramps, stairs, stop, balance, and crouch[;] could occasionally feel with the bilateral upper extremities[;] could understand, remember, apply simple and detailed job instructions; could interact with supervisors and coworkers[;] could have occasional interaction with the public[;] should avoid concentrated exposure to cold, heat, and wetness[;] should avoid exposure to heights and dangerous machinery.

(AT 24.) In crafting this RFC, the ALJ stated she considered plaintiff's intense, persistent, and limiting symptoms alongside the medical evidence and opinions of plaintiff's examining physicians. (AT 24-34.) The ALJ assigned "significant weight" to state agency physical examiners' reports, "some weight" to state agency psychological examiners' reports, and "significant weight" to two examining physicians' reports. (AT 33-34.) Plaintiff submitted additional evidence after these physician reviews, but the ALJ found this newer evidence consistent with the physicians' reports. (Id.) The ALJ found the alleged severity and limiting effects of plaintiff's reported symptoms were "not entirely consistent" with the medical evidence and other evidence in the record, including the conservative treatment plaintiff received. (AT 30.) The ALJ concluded plaintiff was unable to perform past relevant work, but there were jobs existing in significant numbers in the national economy she could perform. (AT 34-35.)

Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; the parties filed cross-motions for summary judgment. (ECF Nos. 14, 19, 20.) Thereafter, plaintiff filed a notice of new authority and supplemental briefing, to which the

Commissioner responded. (ECF Nos. 21, 23, 24.)

## II. LEGAL STANDARD

The court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. Buck, 869 F.3d at 1048.

## III. ISSUES PRESENTED

Plaintiff argues the ALJ erred in failing to: (A) properly evaluate the medical evidence in assessing plaintiff's RFC; and (B) properly evaluate plaintiff's subjective complaints. Plaintiff also contends: (C) the appointment status of the Commissioner affects her case. Plaintiff seeks a remand for benefits or for a new hearing. (ECF Nos. 14, 20, 21, 24.)

The Commissioner disagrees, arguing the decision sufficiently details evidence needed to support the ALJ's assessment of: (A) the physical opinion evidence because the expert opinions from the medical consultants were consistent with the medical record; and (B) the subjective evidence because plaintiff's allegations were inconsistent with the medical evidence, plaintiff's daily activities, and the medical opinion evidence. The Commissioner also contends the appointment status has no bearing on the proceedings in plaintiff's case. Thus, the Commissioner contends the decision as a whole is supported by substantial evidence. (ECF Nos. 19, 23.)

## IV. DISCUSSION

### A. The RFC is supported by substantial evidence and a complete record.

Plaintiff asserts the ALJ failed to properly evaluate the medical evidence in assessing plaintiff's RFC. She contends records generated after her examinations show worsening

4

conditions and so support an RFC of no more than sedentary exertion. (ECF No. 14 at 6.)

Legal Standard

A claimant's RFC is "the most [claimant] can still do despite [claimant's] limitations." and must be "based on all the relevant evidence" in the record. 20 C.F.R. § 404.1545(a)(1). "The ALJ must consider a claimant's physical and mental abilities, [§ 404.1520(b) and (c)], as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, [§ 404.1520(e)]." Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014). At step four the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. Id.

The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Mayes v. Massanari, 276 F.3d 453, 559-60 (9th Cir. 2001). The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation. Id.

Analysis

To support her argument that the evidence supports an RFC of no more than sedentary exertion, plaintiff asserts the ALJ cannot rely on the examining physicians' opinions because the physicians did not receive the additional records plaintiff submitted after the examinations, allegedly showing a worsening of her impairments. (ECF No. 14 at 6.) Specifically, plaintiff cites to an office visit from December 2015 indicating plaintiff's heart impairment classification was the "New York Heart Association (NYHA) Classification II." (See AT 992.) Plaintiff also cites to an October 2017 office visit where plaintiff "presented with chest pain/left shoulder pain for 1-2 weeks" and a December 2017 office visit where plaintiff "presented with a syncopal episode." (See AT 1787, 1839.) Finally, related to plaintiff's diabetes with neuropathy, plaintiff cites a February 2018 note indicating plaintiff "does not believe [gabapentin] is helpful" and a April 2018 neurological exam revealing "decreased pulses in the lower extremities as well as diminished sensation." (See AT 1985, 2023.) Plaintiff further argues these additional medical records triggered the ALJ's duty to develop the record with "pre or post hearing consultative examinations." (Id. at 6-7.)

Plaintiff contends these updated medical records are inconsistent with the overall medical record; however, the ALJ reviewed and considered each medical record plaintiff identifies along with the other objective medical evidence. (See AT 21-34.) The ALJ specifically stated plaintiff's "left ventricular ejection fraction was 55%" and plaintiff "denied cardiac symptoms" during the December 2015 office visit. (AT 29, citing 992.) The ALJ also noted subsequent records showed heart conditions that were stable, improving, and controlled with medication. (See AT 30, citing 1584, 1713, 1927-928, 1954.) For her shoulder, the ALJ classified plaintiff's left shoulder degenerative disc disease as a non-severe impairment, noting in 2017 "on physical examination, the left shoulder had normal range of motion and strength." (AT 21-22.) As to the December 2017 syncopal episode, the ALJ noted plaintiff's self-reports of improvement in to the ER doctor and the contemporaneous CT scan, which revealed no acute intracranial abnormality. (AT 29, citing 2276, 2309-311.) With respect to plaintiff's diabetes, the ALJ explained "updated treatment records from 2018 show [plaintiff's] diabetes was controlled with normal A1C," and "treating physicians merely referred [plaintiff] for diabetic shoes." (AT 31.) The ALJ also noted "no significant degenerative changes" in April 2018. (AT 29, citing 2030.) Despite plaintiff's contention that her impairments worsened, the ALJ explicitly stated the updated medical records are consistent with the overall medical record, including the "significant weight" afforded to the independent medical examiners and the state agency medical examiners. (AT 33.) This is proper. See 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); see also, e.g., Sportsman v. Colvin, 637 F. App'x 992, 995 (9th Cir. 2016) (stating it is not error for a state agency consultant to fail to review subsequent medical records, if the ALJ reviews the entire record and concludes the later-dated medical records are consistent with the overall medical evidence); Meadows v. Saul, 807 F. App'x 643, 647 (9th Cir. 2020) ("[A]lthough the non-examining state agency physicians did not review any evidence beyond August 2014, the ALJ did not err in giving great weight to the physicians' opinions.").

Plaintiff cites case law to support her argument that the ALJ cannot rely on the examining physicians' opinions as substantial evidence because the physicians did not receive the additional

records. (ECF No. 14 at 6-7.) However, the cases plaintiff cites in support of her argument differ significantly from her own case. For example, in Stone v. Heckler, the Ninth Circuit found an ALJ erred by ignoring a more recent medical opinion, but only because the plaintiff suffered from a neuropathic joint disease described as "a progressive destruction of the weight-bearing joints in the lower extremities." 761 F.2d 530, 532 (9th Cir. 1985). Conversely, there is no indication that the physicians in plaintiff's case described her conditions in such a dire manner. In fact, the medical records indicate plaintiff's severe impairments were stable, normal, or improved. (See, e.g., AT 539, 1613, 860.) See Young v. Heckler, 803 F.2d 963, (9th Cir. 1986) (distinguishing Stone when doctor's noted appellant's condition "improved" and the report cited to "is brief and conclusory in form") (citing Stone, 761 F.2d at 532). Plaintiff's case does not involve an ALJ completely disregarding and failing to consider a treating physician's medical opinion, rather the ALJ considered the entire medical record in making the disability determination. Based on the ALJ's review of the updated medical records, this additional evidence would not have changed the examining physicians' opinions or the ALJ's decision. See, e.g., Morin v. Saul, 840 F. App'x 77, 79 (9th Cir. 2020) ("While the state agency consultants did not review evidence that post-dated their reports, [plaintiff] has not shown that this process resulted in any harmful error, especially as the ALJ had the opportunity to review the entire record.").

    To the extent plaintiff argues the ALJ failed to fully develop the record, her argument is unpersuasive. Here, there is no indication there was any ambiguity or the record was inadequate; in fact, the ALJ discussed all updated medical records plaintiff identifies and found them consistent with the overall medical record. (See AT 21-34.) Because the medical evidence regarding plaintiff's impairments is neither ambiguous nor inadequate, the ALJ had no duty to develop the record further. Mayes, 276 F.3d at 459; see also, e.g., Carson v. Comm'r., 2020 WL 5039255, at *4-5 (E.D. Cal. Aug. 26, 2020) (rejecting the argument that the ALJ had a duty to develop the record because claimant was represented by counsel and the record included an abundance of treatment notes and medical opinions).

    Thus, the undersigned finds no error in the ALJ's RFC determination and treatment of the medical evidence.

**B. The ALJ properly discounting plaintiff's more-severe subjective complaints.**

**Legal Standard**

A claimant's statements of subjective symptoms alone are insufficient grounds to establish disability. 20 C.F.R § 404.1529(a). If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose. See Treichler v. Comm'r, 775 F.3d 1090, 1106 (9th Cir. 2014). In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison, 759 F.3d at 1014-15).

The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)). Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: the effectiveness of or noncompliance with a prescribed regime of medical treatment, prescription of conservative treatment, inconsistencies between a claimant's testimony and conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record. See Tommasetti, 533 F.3d at 1040; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). A lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R § 404.1529(c)(2)).

8

**Analysis**

Plaintiff concedes the ALJ "adequately" summarized her testimony regarding her medical impairments, treatment regimen, and limitations. (ECF No. 14 at 8, citing AT 24-27.) Plaintiff primarily argues the ALJ's stated reasons do not rise to the level of clear and convincing. (Id. at 8-9.) However, the ALJ found several reasons for discounting plaintiff's subjective symptom testimony, including inconsistencies with medical evidence, conservative or lack of treatment, and conditions managed with medication. (AT 30-33.) See Tommasetti, 533 F.3d at 1040; Lingenfelter, 504 F.3d at 1040; Rollins, 261 F.3d at 857.

Plaintiff testified to shortness of breath and occasional chest pain due to her congestive heart failure. (AT 56-57.) The ALJ explained plaintiff has a history of congestive heart failure and related symptoms; however, physicians successfully treated plaintiff's condition with the implementation of a pacemaker. (AT 31.) See 20 C.F.R § 404.1529(c)(3)(v) (the ALJ may consider the effectiveness of treatment, other than medication); Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006) (finding an impairment amenable to control is not disabling); see also, e.g., Maldonado v. Berryhill, 2017 WL 2505192, *11 (E.D. Cal. June 6, 2017) (finding the ALJ did not error when she noted plaintiff's "physical condition was compromised, however, overall her condition had improved and was under control after she underwent defibrillator placement and a mitral valve repair"). Moreover, the ALJ noted plaintiff was not "pacemaker dependent" and a treating physician found plaintiff's ejection fraction improvement "great." (AT 27-31 citing 539-40, 1584, 1927-928, 1954.) The ALJ also noted on examination there were no abnormalities noted in the lungs. (AT 31, citing 1618.) Inconsistency with medical records is permissibly included in the ALJ's resolution of plaintiff's symptom testimony. See Rollins, 261 F.3d at 857.

Relating to plaintiff's diabetes with mellitus, plaintiff testified to leg pain, arm tingling, and trouble gripping. (AT 57-60.) The ALJ noted physical examination showed good grip power and normal sensation with no abnormal reflexes or neurological findings. (AT 31.) See Rollins, 261 F.3d at 857; see also Carmickle v. Comm'r, 533 F.3d 1155 ,1161 (9th Cir. 2008) (examining source's opinion was a proper basis for rejecting a claimant's testimony). The ALJ noted in 2018 there was some diminished sensation, but no weakness or functional symptoms on examination

and treating physicians referred plaintiff for diabetic shoes.  (AT 31.)  Plaintiff testified to high blood sugar; however, the ALJ explained plaintiff's diabetes was stable and well controlled with normal A1C, and physicians advised continuing medication and diet modification.  (AT 31, citing 860, 1323, 1582-672.)  Specifically, the ALJ noted plaintiff's severe diabetes symptoms "were inconsistent and contrary to the conservative treatment rendered."  (AT 31.)  See Para v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment"); see, e.g., Carlson v. Comm'r, 2017 WL 3720336, *5 (E.D. Cal. August 29, 2017) (finding the ALJ permissibly relied on conservative treatment, such as "motion-control rocker bottom shoes").

      Plaintiff reported several mental impairments, including diagnoses of bipolar depression and sleep apnea.  (AT 65-70, 105-06.)  The ALJ found plaintiff's sleep apnea a non-severe impairment, which was stable with use of a CPAP machine.  (AT 22, citing 537, 655-719.)  As for plaintiff's bipolar depression, plaintiff testified she was under the care of a mental health professional but only for medication management.  (AT 108-09.)  The ALJ explained plaintiff's symptoms were exacerbated by the passing of her husband, and physicians found no difficulty in plaintiff's manner of interactions with others.  (AT 32-33, citing 118-31, 133-47, 648-54.)  Moreover, the ALJ found no psychiatric admissions or mental status examinations and no records of significant inpatient, outpatient, or mental health treatment of any kind.  (Id.)  In fact, the ALJ noted the evidence shows many missed appointments.  (Id.)  See Tommasetti, 533 F.3d at 1039 ("[T]he ALJ may consider…[the] unexplained or inadequately explained failure to seek treatment"); Burch v. Barnhart, 400 F.3d 676, 681 (lack of treatment a permissible reason to discount testimony asserting severe depression and fatigue).  Plaintiff testified she passed out behind the wheel of her stopped car in front of a 7-Eleven in 2017.  (AT 111.)  However, the ALJ explained the medical records showed issues from an emergency room visit for an "altered mental state" were resolved at discharge with no significant follow-up treatment.  (AT 32, citing 1673-711.)  Additionally, the ALJ properly noted plaintiff was seen for syncope while shopping in December 2017; however, a head CT was negative and physicians found "no etiology for the symptoms."  (AT 32, citing 1712-2314.)  See Rollins, 261 F.3d at 857.

Plaintiff contends the ALJ does not cite to any evidence that more aggressive treatment options exist or medical professional have recommended them. (ECF No. 14 at 10.) Plaintiff cites to LaPeirre-Gutt v. Astrue, where the Ninth Circuit found a woman who previously underwent cervical fusion surgery and took narcotic pain medications "cannot be discredited for failing to pursue non-conservative treatment options where none exist." 382 F. App'x 662, 664 (9th Cir. 2010). Here, there is no evidence plaintiff routinely takes narcotic pain medication, rather the evidence shows plaintiff's treating physicians report plaintiff's severe impairments were stable, well-controlled, or improved with the treatments prescribed. (See, e.g., AT 539, 1613, 860.) When an impairment "can be controlled effectively with medication," it cannot be considered disabling. See Warre, 439 F.3d at 1006; see also, e.g., Wells v. Comm'r, 2021 WL 859423, * 6 (E.D. Cal. March 8, 2021) (finding the ALJ did not error when "the decision details months of notes from physicians showing plaintiff's conditions were well controlled by medication, as well as the proper use of shoes and cream for his feet.").

**C. Plaintiff is not entitled to a rehearing of her disability claim due the appointment status of the Commissioner.**

In a supplemental briefing, plaintiff argues the ALJ's decision should be reversed and remanded for a new hearing because the appointment of the Commissioner of the Social Security Administration violated the Constitution. (ECF No. 23 at 3-7.) Article II provides that the "executive Power" is vested in the President, who must "take Care that the Laws be faithfully executed." Art. II, § 1, cl. 1; Art. II, § 3. "The entire executive power is vested in the President alone." Seila Law LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183, 2197, (2020). Because one person alone cannot fulfill the executive power, the President can act through his executive officers. Id. The Supreme Court confirmed the power of the President to select and remove an executive officer as part of the executive power under Article II in Myers v. United States, 272 U.S. 52 (1926). Specifically, the President appoints and the Senate confirms the Commissioner of the Social Security Administration. 42 U.S.C. § 902(a)(1). "An individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3). Nancy Berryhill served as

Acting Commissioner from January 27, 2017, until June 17, 2019; Andrew Saul served as Commissioner from June 17, 2019, until July 9, 2021; and beginning on July 9, 2021, Kilolo Kijakazi currently serves as Acting Commissioner. See 42 U.S.C. § 902(b)(4) ("The Deputy Commissioner shall be Acting Commissioner of the Administration during the absence or disability of the Commissioner and…in the event of a vacancy in the office of the Commissioner.")

Plaintiff asserts 42 U.S.C. § 902(a)(3)—limiting the President's authority to remove the Commissioner without good cause—violates separation of powers. (ECF No. 23 at 3-7.) See Seila Law, 140 S. Ct. at 2197 (holding a for-cause restriction of the President's executive power to remove the CFPB's single director violated separation of powers). Plaintiff argues Commissioner Saul "had no authority to delegate" her case to the ALJ or the Appeals Council because the "relevant actions" were completed under Commissioner Saul's "unconstitutional tenure." (ECF No. 23 at 5, citing Lucia v. SEC, 138 S. Ct. 2044, 2055 (2018).) As a result, plaintiff argues the Court should remand for a new hearing. (Id. at 7.)

The Commissioner concedes § 902(a)(3) violates the separation of powers to the extent it limits the President's authority to remove the Commissioner without cause. (ECF No. 24 at 1-2.) However, the Commissioner argues the unconstitutional tenure alone does not entitle plaintiff to remand for two reasons. (Id. at 2.) First, the Commissioner argues the ALJ who denied plaintiff claim was not appointed by a Commissioner subject to § 902(a)(3). (Id.) Second, even if a tenure-protected Commissioner appointed the deciding ALJ, plaintiff would also need to show § 902(a)(3)'s removal restriction caused the ALJ to deny her benefits. (Id.) The Commissioner alternatively argues the Court should deny plaintiff's request for a new hearing based upon other legal considerations. (Id.)

Here, the ALJ who heard plaintiff's claim on May 28, 2019, and issued a decision on July 19, 2019, held office under an appointment legally ratified in July 2018 by then-Acting Commissioner Berryhill. (AT 15-41, 48-84.) Plaintiff's reliance on Lucia v. SEC is misplaced because the ALJ was not unconstitutionally appointed by Commissioner Saul. In Lucia, the Supreme Court held the ALJs of the SEC are Officers of the United States and must be

constitutionally appointed. 138 S. Ct. at 2055. The Court found the "appropriate" remedy for agency decisions tainted with an appointments violation is a new "hearing before a properly appointed" official. Id. (citing Ryder v. U.S., 515 U.S. 177, 182-83 (1995)). Unlike Lucia, the ALJ deciding plaintiff's claims held office under an appointment legally ratified by Acting Commissioner Berryhill. (AT 15-41, 48-84.) Therefore, no unconstitutional appointments violation exists. See, e.g., Rivera-Herrera v. Kijakazi, 2021 WL 5450230, at *6 (E.D. Cal. Nov. 22, 2021) ("[T]he ALJ who adjudicated Plaintiff's claim on September 18, 2019 was properly appointed pursuant to former Acting Commissioner Berryhill's July 16, 2018 ratification of ALJ appointments. As such, there is no Appointments Clause violation."); Lisa Y. v. Comm'r, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021) (same).

      Even if the ALJ adjudicating plaintiff's claim was appointed under the unconstitutional tenure of Commissioner Saul, Collins v. Yellen controls. 141 S. Ct. 1761, 1787-89 (2021); see Decker Coal Co. v. Pehringer, 8 F.4th 1123, 1137 (9th Cir. 2021) ("Collins is controlling with respect to the remedy for any unconstitutionality in the removal provisions."). In Collins, the plaintiffs sought to invalidate prior actions by FHFA directors, who possessed removal protection and thus headed an unconstitutionally structured agency. 141 S. Ct. at 1787 (finding the prior FHFA actions were "adopted and implemented by officers who lacked constitutional authority and their actions were therefore void"). The Supreme Court refused to invalidate the prior actions, explaining:

> All the officers who headed the FHFA during the time in question were properly appointed. Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA ... as void.

Id. at 1787. Accordingly, the Court held a plaintiff seeking relief from an unconstitutional removal restriction must demonstrate the restriction actually caused him or her harm. See Collins, 141 S. Ct. at 1787-1789 n.24 (noting an unconstitutional removal restriction "does not mean that actions taken by such an officer are void ab initio and must be undone"); Decker Coal, 8 F.4th at 1137 ("Here, the ALJ lawfully exercised power that he possessed by virtue of his

appointment, which the Secretary ratified before the ALJ adjudicated the claim. Absent a showing of harm, we refuse to unwind the decisions below."). Plaintiff does not demonstrate any connection between her denial of benefits and the unconstitutional removal provision. Accordingly, plaintiff is not entitled to remand for a new hearing. See Decker Coal, 8 F.4th at 1136-138 (finding the plaintiff not entitled to new hearing based upon allegedly unconstitutional removal provision where the plaintiff failed to make any showing of a nexus between the allegedly unconstitutional removal provisions and the ALJ's decision); see also, e.g., Rivera-Herrera, 2021 WL 5450230, at *8; Lisa Y., 2021 WL 5177363, at *8 ("Reversal is not mandated under Seila Law or Collins because § 902(a)(3)'s removal clause is severable, and because there is no possibility § 902(a)(3)'s removal clause harmed Plaintiff.").

## V. CONCLUSION

Having resolved plaintiff's claims of error, the court finds that the ALJ's decision otherwise supported by substantial evidence in the record as a whole. Buck, 869 F.3d at 1048. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner; and
4. The Clerk of Court is directed to CLOSE this case.

Dated: February 14, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

whit.1695